RECEIVED
2010 MAY 14 A 10:07
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **Gwendolyn Moorer,** )<br>Plaintiff, )<br> )<br>v. )<br> )<br>**Encore Capital Group, Inc., d/b/a** )<br>**Midland Credit Management,** a foreign )<br>Company, **First Premier Bank,** a foreign )<br>company, **Cortrust Bank,** a foreign )<br>Company, **Experian Information** )<br>**Solutions, Inc., Equifax Information** )<br>**Services, LLC,** a foreign Limited liability )<br>company, **Trans Union, LLC,** a foreign )<br>limited liability company, )<br>Defendants. ) | Civil Action No.: 2:10-CV-422-WKW<br>**Plaintiff Demands Jury Trial** |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through undersigned counsel, and would show unto this Honorable Court as follows:

### PRELIMINARY STATEMENT

1. This Complaint seeks actual, compensatory, statutory and/or punitive damages, brought by an individual consumer (hereinafter referred to as "Plaintiff") against Defendants, jointly and severally, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter referred to as "the FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter referred to as "the FCRA"), and other federal and state common law causes of action.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and the doctrine of supplemental jurisdiction pursuant

to 28 U.S.C. § 1367. Defendants' violations of Plaintiff's rights, as alleged herein, occurred in Montgomery County, Alabama, and were committed within the Northern Division of the Middle District of Alabama.

## PARTIES

3. Plaintiff Gwendolyn Moorer (hereinafter referred to as "Plaintiff") is a natural person and resident and citizen of Dallas County, the State of Alabama, and of the United States. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and Ala. Code 1975, § 8-19-3(2).

4. Defendant Encore Capital Group, Inc., d/b/a Midland Credit Management (hereinafter referred to as "Midland" or "Defendant") is a foreign corporation engaged as "debt collectors" as defined by and within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and as a "person" defined under Ala. Code 1975 § 8-19-3(5), engaged in the business of collecting debts in this State where Midland regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of debts using the mails and telephone.

5. Defendant First Premier Bank (hereinafter referred to as "FPB" or "Defendant") is a foreign corporation that regularly furnishes information on consumers to consumer reporting agencies.

6. Defendant Cortrust Bank (hereinafter referred to as "Cortrust" or "Defendant") is a is a foreign corporation that regularly furnishes information on consumers to consumer reporting agencies.

7. Defendant Experian Information Solutions, Inc., (hereinafter referred to as "Experian" or "Defendant") is a foreign corporation licensed to do business within the State of

Alabama. Experian is a consumer reporting agency, as defined in section 1681a(f) of the FRCA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

8. Defendant Equifax Information Services, LLC (hereinafter referred to as "Equifax" or "Defendant") is a foreign limited liability company licensed to do business within the state of Alabama. Equifax is a consumer reporting agency, as defined in section 1681a(f) of the FRCA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

9. Defendant Trans Union, LLC (hereinafter referred to as "Trans Union" or "Defendant") is a foreign limited liability company licensed to do business within the state of Alabama. Trans Union is a consumer reporting agency, as defined in section 1681a(f) of the FRCA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.

## FACTS

**Defendants Midland, FPB and Cortrust:**

10. Plaintiff reincorporates by reference herein paragraphs one (1) through eight (8).

11. In 2004, Plaintiff filed for Chapter 13 debt relief under Title 11 of the United States Bankruptcy Code and was discharged on December 2, 2008.[1]

12. Defendants Midland, FPB and Cortrust were involved in the Plaintiff's Chapter 13 Bankruptcy. Specifically,

---

[1] United States Bankruptcy Court for the Middle District of Alabama, Case No.: 04-30274.

   a. Midland was listed on the Schedule F for creditors holding unsecured claims in the amount of $1,077.00. This debt was discharged through the Bankruptcy. Midland received notice of the discharge through the BNC.

   b. FPB was listed on the Schedule F for creditors holding unsecured claims in the amount of $528.00. This debt was discharged through the Bankruptcy. FPB received notice of the discharge through the BNC.

   c. Cortrust was listed on the Schedule F for creditors holding unsecured claims in the amount of $467.00. This debt was discharged through the Bankruptcy. Cortrust received notice of the discharge through the BNC.

13. Notwithstanding the aforesaid, Defendant Midland continues to report Plaintiff's accounts to all three of the national consumer reporting agencies (hereinafter referred to as "CRAs") as having current balances due and payable, rather than reflecting that such were discharged in bankruptcy. Specifically:

   a. Midland reported, and continues to report, to Equifax that Plaintiff has an outstanding balance with, and remains personally liable to, Midland for the amount of $990.00. More specifically, Midland reports this debt as a "Collection Account" as of January 1, 2010 – in excess of one year after the date of discharge.

   b. Midland reported, and continues to report, to Experian that Plaintiff has an outstanding balance with, and remains personally liable to, Midland for the amount of $990.00. More specifically, Midland reports this debt as "collections" and that the "account is seriously past due date/account assigned to attorney, collection agency, or credit grantor's internal collection department." Midland

reports this as of September 16, 2009 – in excess of nine months past the date of discharge.

    c. Midland also reported, and continues to report, to Trans Union that Plaintiff has an outstanding balance with, and remains personally liable to, Midland for the amount of $990.00.  More specifically, Midland reports this debt in the "Collections Section" of the Trans Union credit report and has verified the debt as recently as January 18, 2010 – in excess of one year after the date of discharge.

14. Notwithstanding the aforesaid, Defendant FPB continues to report Plaintiff's accounts to all three of the national CRA's as having current balances due and payable, rather than reflecting that such were discharged in bankruptcy.  Specifically:

    a. FPB reported, and continues to report, to Equifax that Plaintiff has an outstanding balance with, and remains personally liable to, FPB for the amount of $405.00.  FPB reported this balance as recently as January 1, 2010 – in excess of one year past the date of discharge- as "bad debt; placed for collection."

    b. FPB also reported, and continues to report, to Experian that Plaintiff has an outstanding balance with, and remains personally liable to, FPB for the amount of $405.00.  More specifically, FPB reports this as recently as January 8, 2010 – in excess of one year past the date of discharge- and reports "unpaid balance reported as a loss by credit grantor."

    c. FPB reported, and continues to report, to Trans Union that Plaintiff has an outstanding balance with, and remains personally liable to, FPB for the amount of $405.00.  More specifically, FPB reports this as of January 8, 2010 – in excess of

one year past the date of discharge- and reports that the debt has been "charged off as bad debt."

15. Notwithstanding the aforesaid, Defendant Cortrust continues to report Plaintiff's accounts to all three of the national CRA's as having current balances due and payable, rather than reflecting that such were discharged in bankruptcy. Specifically:

    a. Cortrust reported, and continues to report, to Experian that Plaintiff has an outstanding balance with, and remains personally liable to, Cortrust for the amount of $128.00. Cortust reports this debt within the "Collections Section" of the credit report and verified the debt on January 3, 2005.

16. Defendants Midland, FPB and Cortrust obtained knowledge of Plaintiff's discharge on at least two separate occasions, i.e. receipt of the BNC Certificate of Service – Meeting of Creditors and the BNC Certificate of Service – Order of Discharge.

17. Defendants have intentionally, willfully and maliciously failed to implement reasonable procedures to insure that Plaintiff's accounts are reported as having "0" balances as contemplated by the Fair Credit Reporting Act and Ordered by Plaintiff's bankruptcy discharge.

18. Notwithstanding that Defendants properly update numerous accounts each month they have intentionally, maliciously and willfully refused to do so with Plaintiff. More specifically, Defendants have a policy to refuse to properly update credit files of consumers who have obtained debt relief through the U.S. Bankruptcy Code.

19. Defendants have intentionally reported inaccurate information in an effort to force or coerce the Plaintiff into paying a debt that has been discharged in bankruptcy.

20. Defendants have promised, through their subscriber agreements or contracts with the CRAs to update accounts that have been discharged in bankruptcy but have willfully, maliciously, recklessly, wantonly and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA, FDCPA, ADTPA, federal law and state law which has resulted in this information remaining on Plaintiff's credit reports.

21. Defendants know that reporting these balances will lead to the publication of false and defamatory information every time Plaintiff's credit reports are accessed. Because Plaintiff's credit reports have been accessed since the discharge, such false information has been published to third parties.

22. All actions taken by employees, agents, servants, or representatives of any type for Defendants were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

23. Defendants' actions – engaging in a pattern and practice of wrongful and unlawful behavior, i.e. attempting to collect upon discharged debts – were malicious, wanton, reckless, intentional or willful, and performed with the desire to harm Plaintiff, with the knowledge that their actions would very likely harm Plaintiff, and that their actions were taken in violation of the law.

24. The actions, omissions, misrepresentations, and violations of the FCRA, FDCPA, federal law, and state law of Defendants, regarding Plaintiff's discharged debts, as described herein, has resulted in the negligent and intentional infliction of mental and emotional distress upon Plaintiff proximately causing Plaintiff to suffer severe mental distress, mental and physical pain, embarrassment, and humiliation of which Plaintiffs will in the future continue to suffer.

25. The Plaintiff has suffered damages including, but not limited to, the loss of credit, the loss of the ability to purchase and benefit from credit, mental suffering, and emotional pain as a result of Defendants' publication of this adverse credit information.

**Defendants Equifax, Experian and Trans Union:**

26. Defendants have failed to implement and/or follow "reasonable procedures to assure maximum possible accuracy" of the information they publish and continue to publish, in consumer credit reports in violation of 15 U.S.C. §1681(e)(b).

27. Indisputably, based upon sheer volume of factually identical actions, Defendants should reasonably be aware of the inadequacy of their procedures and implement policies to improve the accuracy of the information they publish.  The FTC's Official Staff Commentary § 603 item B states that "[a] consumer reporting agency must also adopt reasonable procedures to eliminate systematic errors that it knows about, or should reasonably be aware of, result from procedures followed by its sources of information."

28. Defendants' intentional, reckless, and willful violations of the FCRA, federal law and state law has resulted in the negligent and intentional infliction of mental and emotional distress upon Plaintiff proximately causing Plaintiff to suffer severe emotional distress, mental and physical pain, embarrassment, and humiliation which Plaintiff will in the future continue to suffer.

**COUNT ONE
ALL DEFENDANTS
VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681, *et seq.***

29. Plaintiff incorporates by reference herein paragraphs one (1) through twenty-eight (28).

30. In the entire course of their actions, Defendants willfully and/or negligently violated multiple provisions of the FCRA in one or more of the following respects:

    a. By willfully and/or negligently failing, in the preparation of the consumer reports concerning Plaintiff, to follow reasonable procedures to assure maximum possible accuracy of the information in the reports as required by 15 U.S.C. § 1681(e)(b);

    b. By willfully and/or negligently failing to comport with reinvestigation procedures listed within 15 U.S.C. § 1681i;

    c. By willfully and/or negligently failing to fulfill their duties as listed within section 15 U.S.C. § 1681s-2, *i.e.* reporting information with actual knowledge of errors, reporting information after notice and confirmation of errors, failing to update and/or correct previously reported information determined to be inaccurate or incomplete, failing to provide notice of dispute, and failing to provide notice of closed account;

    d. Invading the privacy of Plaintiff; and

    e. Failing in their duty to prevent foreseeable injury to Plaintiff.

31. The FTC's Official Staff Commentary § 607 item 6 states that "a consumer report may include an account that was discharge in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt." Notwithstanding that the Federal Trade Commission's Staff Commentary lacks substantive precedential esteem it is persuasive in that it provides an explanation of the phrase "reasonable procedures.

32. As stated by the Honorable Judge William R. Sawyer of the United States Bankruptcy Court of the Middle District of Alabama, "[t]he sheer number of . . . cases [filed for a creditor's failure and/or refusal to update a discharged debtor's credit reports] may

suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[2]

33. Defendants have a policy to "park" their accounts on at least one of Plaintiffs' credit reports. This industry-specific term refers to keeping a false balance on the credit report so that the consumer will be forced to pay off the balance in order to obtain refinancing, qualify for a loan, or increase the consumer's credit score from the artificially lowered score which directly resulted from the Defendants' intentional and malicious conduct.

34. Defendants have furnished information regarding the Plaintiff, a consumer, to one or more of the CRAs, when they had reason to know the information was inaccurate.

35. Defendants furnished this information to the CRAs after being notified by the Plaintiff that the information is inaccurate, and the information is, in face, inaccurate.

36. Defendants know that "parking" balances, to intentionally and maliciously coerce consumers into paying discharged debts, will lead to the publication of false and defamatory information every time Plaintiff's credit reports are accessed. Because Plaintiff's credit reports have been accessed since the discharge, such false information has been published to third parties.

37. The foregoing acts and omissions were undertaken by Defendants willfully, intentionally, and knowingly as part of their routine credit reporting and/or credit furnishing business, and in gross reckless disregard of the rights of Plaintiff.

38. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

## COUNT TWO

---

[2] In re Norma, 2006 WL 2818814 (Bankr. M.D. Ala. September 29, 2006).

## DEFENDANTS MIDLAND, FPB AND CORTRUST
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692, *et seq.*

39. Plaintiff incorporates herein by reference paragraphs one (1) through thirty-seven (37).

40. Defendants attempted to collect a consumer debt allegedly owed by Plaintiff and the obligation required Plaintiff to pay money arising out of transactions for personal, family, and household purposes. More specifically, Defendants violated the FDCPA by taking one or more of the following actions against Plaintiff:

    a. Attempting to collect a debt by reporting and/or allegedly verifying a balance within the "Collections Account" section of at least one of Plaintiff's credit reports when there is no legal right to collect the discharged debt;

    b. Taking illegal actions against Plaintiff;

    c. Refusing to properly update Plaintiff's accounts;

    d. Failing to show the accounts as being "disputed" by Plaintiff; and

    e. Reporting the invalid debt on Plaintiff's credit reports.

41. The foregoing acts and omissions were undertaken by Defendants willfully, intentionally, and knowingly as part of their routine debt collection business and/or in gross reckless disregard for Plaintiff's rights.

42. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

43. As a result of the above violations of the FDCPA, Defendants are liable to Plaintiff for Plaintiff's actual damages, statutory damages, and costs and attorney's fees under 15 U.S.C. § 1692k, civil liability [Section 813 of Pub. Law].

## COUNT THREE
## DEFENDANTS MIDLAND, FPB AND CORTRUST
## WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION
## ATTEMPTING TO COLLECT A DISCHARGED DEBT

44. Plaintiff incorporates herein by reference paragraphs one (1) through forty-two (42).

45. Defendants have willfully violated the Chapter 7 discharge injunction by attempting to collect a debt that arose prior to and was discharged in Plaintiff's bankruptcy case. More specifically, Defendant assigned, cosigned, or otherwise transferred for the purpose of collection a discharged account subsequent to receiving notice of its discharge.

46. Because Defendant obtained knowledge of Plaintiff's bankruptcy discharge on at least two occasions, i.e., receipt of the BNC Certificate of Service– Meeting of the Creditors and the BNC Certificate of Service– Order of Discharge, Defendant has willfully violated the Chapter 7 bankruptcy injunction. Despite such knowledge, Defendant continues its collection efforts upon the discharged debt.

47. As a result thereof, Plaintiff has suffered damages including, but not limited to, stress, emotional distress, anxiety, nervousness and mental anguish.

48. Accordingly, Defendants should be held in contempt and are liable to Plaintiff for actual, compensatory and punitive damages, and costs and attorney's fees.

## COUNT FOUR
## DEFENDANTS MIDLAND, FPB AND CORTRUST
## WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION
## CONTINUING TO REPORT DISCHARGED DEBTS ON PLAINTIFF'S CREDIT REPORTS

49. Plaintiff incorporates paragraphs one (1) through forty-eight (48) as if fully state herein.

50. Defendant willfully violated the Chapter 7 discharge injunction by reporting to one or more credit reporting agencies, subsequent to its knowledge of the discharge, that the discharged debt had a balance due and owing to Defendant.

51. It is standard protocol in the credit reporting industry that accounts discharged in bankruptcy should be reported as such with a zero balance. The Federal Trade Commission's commentary on the Fair Credit Reporting Act directs that debts discharged in bankruptcy be reported with a zero balance to reflect that the consumer is no longer personally liable for the discharged debt.

52. Because Defendant obtained knowledge of Plaintiff's bankruptcy discharge on at least two occasions, i.e., the BNC – Meeting of the Creditors and the BNC – Discharge, Defendant has willfully violated the Chapter 7 bankruptcy injunction. Despite such knowledge, Defendant continues its collection efforts upon the discharged debt.

53. Defendants' acts of refusing to update Plaintiff's credit reports to show a zero balance after the Bankruptcy discharge violate the discharge injunction.

54. Defendants' actions of refusing to update Plaintiff's credit reports were designed to coerce payment of the discharged debt.

55. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

56. As a result thereof, Plaintiff has suffered damages including, but not limited to, stress, emotional distress, anxiety, nervousness and mental anguish.

57. Accordingly, Defendants should be held in contempt and are liable to Plaintiff for actual, compensatory and punitive damages, and costs and attorney's fees.

<u>**COUNT FIVE**</u>
<u>**DEFENDANTS MIDLAND, FPB AND CORTRUST**</u>
<u>**NEGLIGENT, RECKLESS AND WANTON CONDUCT**</u>

58. Plaintiff incorporates herein by reference paragraphs one (1) through forty-seven (47).

59. Defendants' acts, as described herein, were done so negligently and without care or concern for the well-being of Plaintiff.

60. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

61. As a proximate consequence of Defendants' negligence, Plaintiff has been caused to suffer severe emotional and mental distress, and Defendants are liable to Plaintiff for actual, compensatory, and punitive damages, costs and attorney's fees, and any other and further relief deemed appropriate by this Court.

## COUNT SIX
## ALL DEFENDANTS
## INVASION OF PRIVACY

62. Plaintiff incorporates by reference herein paragraphs one (1) through fifty-one (51).

63. Defendants' conduct, as described herein, constitutes an invasion of Plaintiff's privacy in that it intrudes into Plaintiff's private life, publishes private facts regarding Plaintiff, and places Plaintiff in a false light in the eyes of those to whom the publications are made.

64. Defendants' actions were done maliciously, without privilege, and with a willful intent to injury Plaintiff.

65. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

66. As a proximate consequence of Defendants' invasion of Plaintiff's privacy, Plaintiff has been caused to suffer severe emotional and mental distress, and Defendants are liable to

Plaintiff for actual, compensatory, and punitive damages, costs and attorney's fees, and any other and further relief deemed appropriate by this Court.

### COUNT SEVEN
### ALL DEFENDANTS
### DEFAMATION

67. Plaintiff incorporates by reference herein paragraphs one (1) through fifty-six (56).

68. Defendants published false information about Plaintiff by reporting to one or more of the CRAs, or other third parties, either a false account or balance.

69. Likewise, Defendants published false information about Plaintiff each time Plaintiff's credit reports were accessed – which was the result intended by Defendants.

70. The publications and defamations were done maliciously, without privilege, and with a willful intent to injure Plaintiff.

71. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

72. As a proximate consequence of Defendants' false reporting or publishing, Plaintiff has been caused to suffer severe emotional and mental distress, and Defendants are liable to Plaintiff for actual, compensatory, and punitive damages, costs and attorney's fees, and any other and further relief deemed appropriate by this Court.

### COUNT EIGHT
### DEFENDANTS MIDLAND, FPB AND CORTRUST
### INTENTIONAL MISREPRESENTATION

73. Plaintiff incorporates by reference herein paragraphs one (1) through sixty-two (62).

74. Defendants intentionally, maliciously, recklessly and/or negligently misrepresented material facts in that they falsely represented to others that Plaintiff owes money to that Defendant.

75. Defendants intend that those who review the credit reports of Plaintiff will rely upon the misrepresentations and suppressions of material fact related to the balance owed and the lack of indication that the account was discharged in bankruptcy.

76. Defendants intended that the justifiable and reasonable reliance by others would adversely affect Plaintiff.

77. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

78. As a proximate consequence of Defendants' intentional misrepresentation, Plaintiff has been caused to suffer severe emotional and mental distress, and Defendants are liable to Plaintiff for actual, compensatory, and punitive damages, costs and attorney's fees, and any other and further relief deemed appropriate by this Court.

## COUNT NINE
## DEFENDANTS MIDLAND, FPB AND CORTRUST
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiff incorporates by reference herein paragraphs one (1) through sixty-eight (68).

80. Defendants' conduct, as described herein, was reckless and/or intentional, and performed with disregard for the rights of Plaintiff.

81. Plaintiff has suffered injury to her credit report, has been turned down for credit and/or has had to accept less favorably financing terms and rates than she would have if Defendants had not inaccurately reported Plaintiff's credit history.

82. As a proximate consequence of Defendants' extreme and outrageous conduct, Plaintiff has been caused to suffer severe emotional and mental distress, and Defendants are liable to Plaintiff for actual, compensatory, and punitive damages, costs and attorney's fees, and any other and further relief deemed appropriate by this Court.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined by the jury impaneled to hear this case as compensatory and punitive damages, plus interests and costs as well as any other remedy allowed by law.  Plaintiff also requests this Court, on the jury returning a verdict for the Plaintiff, to assess an attorney fee to be awarded to Plaintiff's attorney.

### PRAYER FOR RELIEF

**WHEREFORE, THE ABOVE PREMISES CONSIDERED,** Plaintiff respectfully prays that judgment be entered against each and every Defendant, jointly and severally, by this Court for the following:

a) Award Plaintiff actual damages;

b) Award Plaintiff punitive damages;

c) Award Plaintiff statutory damages where applicable;

d) Award Plaintiff compensatory damages for mental and emotional distress, humiliation and embarrassment;

e) Award Plaintiff reasonable attorney's fees and costs of this litigation; and

f) Grant such other and further relief as this Honorable Court deems just and proper.

**RESPECTFULLY SUBMITTED** this the 14th day of May 2010.

*/s/ Bradford J. Griffin*
Bradford J. Griffin (GRI083)
*Attorney for Plaintiff*

VICKERS & WHITE, PLLC
428 South Lawrence Street
Montgomery, AL 36111
Telephone: (334) 269-1192
Facsimile: (334) 239-7408
bgriffin@vickersandwhitelaw.com

**THE DEFENDANTS MAY BE SERVED AT THE FOLLOWING ADDRESSES:**

CORTRUST
c/o Jack Hopkins
300 Cherapa Place, Suite 101
Sioux Falls, SD 57103

EQUIFAX INFORMATION SERVICES, LLC
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

EXPERIAN INFORMATION SOLUTIONS, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

FIRST PREMIER BANK
c/o Dana J. Dykhouse
601 S. Minnesota Avenue
Sioux Falls, SD 57104-4824

ENCORE CAPITAL GROUP, INC. d/b/a/ MIDLAND CREDIT MANAGEMENT, INC.
c/o CSC Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833

TRANS UNION, LLC
c/o Prentice-Hall Corporation System, Inc.
150 South Perry Street
Montgomery, AL 36104